# 24-0999-cv

## United States Court of Appeals

*for the*

## Second Circuit

———◆———

AVALON HOLDINGS CORPORATION,

*Plaintiff-Appellee,*

— v. —

GUY GENTILE,

*Defendant-Appellant,*

MINTBROKER INTERNATIONAL, LTD.,

*Defendants.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## SUPPLEMENTAL APPENDIX

DAVID LOPEZ
LAW OFFICE OF DAVID LOPEZ
171 Edge of Woods Road
P.O. Box 323
Southampton, New York 11968
(631) 287-5520

MIRIAM TAUBER
MIRIAM TAUBER LAW PLLC
885 Park Avenue, Suite 2A
New York, New York 10075
(323) 790-4881

*Attorneys for Plaintiff-Appellee*

 (800) 4-APPEAL • (376855)

i

## TABLE OF CONTENTS

**Page**

Conference Hearing Transcript held before the
Honorable Denise Cote, dated July 23, 2024 ........ SA-1

Order by the Honorable Denise Cote, dated
September 20, 2024 ............................................. SA-15

O7nWavaC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     AVALON HOLDINGS CORP.,
 3
                    Plaintiff,
 4
            v.                              18 Civ. 7291 (DLC)
 5
     GUY GENTILE and MINTBROKER
 6   INTERNATIONAL, LTD.,
 7                  Defendants.
     ------------------------------x
 8   NEW CONCEPT ENERGY, INC.,
 9                  Plaintiff,
10          v.                              18 Civ. 7291 (DLC)
11   GUY GENTILE and MINTBROKER
     INTERNATIONAL, LTD.,
12
                    Defendants.
13   ------------------------------x       Conference
14
15                                         New York, N.Y.
                                           July 23, 2024
16                                         12:00 p.m.
17   Before:
18                      HON. DENISE COTE,
19                                         District Judge
20                         APPEARANCES
21   DAVID LOPEZ
     MIRIAM D. TAUBER
22        Attorneys for Plaintiffs
23   OLSHAN FROME WOLOSKY LLP
          Attorneys for Defendant Gentile
24   BY:  THOMAS J. FLEMING
25
```

SA-2

O7nWavaC

1               (Case called; appearances noted)

2               THE COURT:  Mr. Fleming, is your client's name

3      pronounced genteel?

4               MR. FLEMING:  I believe it's pronounced genteel, your

5      Honor.

6               THE COURT:  Could you please stand.

7               MR. FLEMING:  Oh.  Yes, your Honor.

8               Yes, I believe that's how it's pronounced.

9               THE COURT:  How?

10              MR. FLEMING:  Genteel.

11              THE COURT:  Genteel.  Thank you.

12              Sir, your client isn't here.

13              MR. FLEMING:  That's correct, your Honor.

14              THE COURT:  And why is that?

15              MR. FLEMING:  I -- I don't know why he's not here,

16     your Honor.  I haven't spoken with him in quite some time.  I

17     was served with discovery, my law firm, in this case, and I

18     provided answers as to his last known whereabouts that I had,

19     and I have no answer as to why he's not here.  He did not

20     retain me for postjudgment proceedings.  I haven't discussed

21     postjudgment proceedings with him, and I have no idea why he's

22     not here other than I assume he doesn't want to be here.

23              THE COURT:  And are you representing him in any other

24     connection at the moment?

25              MR. FLEMING:  Yes, your Honor.  I am counsel of record

SA-3

O7nWavaC

1    in the Second Circuit on his appeal.

2            THE COURT:  And that's the appeal in this litigation?

3            MR. FLEMING:  Yes, your Honor.  I'm appellate counsel

4    on this matter.

5            THE COURT:  And how do you communicate with him in

6    connection with that appeal representation?

7            MR. FLEMING:  I mean I communicated with him at the

8    outset, when the judgment came down, but since then I haven't

9    spoken to him and -- you know, it's an appeal, your Honor.  I

10   think I understand how to write an appeal and how to prepare an

11   appeal.  I don't need to have a dialogue with Mr. Gentile.

12           THE COURT:  Have you filed a brief?

13           MR. FLEMING:  I have not, your Honor.  The brief is

14   due next week.

15           THE COURT:  And you're not planning to discuss it with

16   your client?

17           MR. FLEMING:  I don't expect to discuss it with my

18   client, your Honor.

19           THE COURT:  So you have not spoken to your client

20   or -- well, have you communicated with your client by any means

21   in the year 2024?

22           MR. FLEMING:  Oh, I'm sure I've spoken to him in 2024.

23   I can't tell you when the last time I spoke to him.  I mean the

24   judgment in this case, I believe, came down early 2024, and

25   when it came to filing our objections to the report and

SA-4

O7nWavaC

1   recommendation, I spoke to Mr. Gentile about that.  I don't

2   have a precise timeline in '24, but you know, since the

3   judgment came down, I don't know if I've spoken to him.

4   Certainly not in July or June.

5          THE COURT:  And do you communicate with him by email

6   or mail?

7          MR. FLEMING:  Not by mail, your Honor.  I have a last

8   known address.  I send whatever I get, including my bills, I

9   send to the last known address, and it's come back return to

10  sender for, you know, nobody there.

11         THE COURT:  So he's not paying your bills?

12         MR. FLEMING:  He has not paid my bills for quite some

13  time, your Honor.

14         THE COURT:  And --

15         MR. FLEMING:  I had discovery; they asked for all the

16  paper information, which I gave them.

17         THE COURT:  I'm sorry?

18         MR. FLEMING:  They served discovery on my law firm, so

19  my law firm was served with a restraining notice along with

20  information requests, which I complied with and gave them

21  information about when I was paid, who paid me and the amounts

22  and all that stuff.

23         THE COURT:  When you say they, you're referring to the

24  plaintiffs?

25         MR. FLEMING:  Yes, I am, your Honor.

SA-5

O7nWavaC

1          THE COURT:  What is the last known address you have by

2     email or other address for the defendant -- Mr. Gentile.

3          MR. FLEMING:  I have I don't have it with me, your

4     Honor.  It's an address in Puerto Rico, which I answered in the

5     discovery.  And I have an email address for him.  I could check

6     on my phone, if you'd like.  The last email I sent came back.

7          And his email is not in my contacts.  I might be able

8     to find it by searching emails.

9          THE COURT:  And did you provide the email address to

10    the plaintiffs' counsel?

11         MR. FLEMING:  I wasn't requested for that.  That

12    wasn't requested, your Honor.  The discovery asked for a last

13    known address or home address.  If they want that, I'd be glad

14    to give it to them.

15         THE COURT:  Great.  If you could provide that to

16    plaintiffs' counsel, I'd appreciate it.  Can you do that later

17    today?

18         MR. FLEMING:  I'd be glad to do that.

19         I might also add, your Honor, it might help inform the

20    Court, Mr. Gentile's whereabouts are sort of known to the

21    plaintiffs.  He was on trial earlier this month in Florida.

22    The SEC brought a proceeding against him, and I know what I

23    read on PACER, which I've talked with plaintiff's counsel; they

24    read PACER too, and they know that he's been on trial down

25    there.  He has counsel in that case.  Perhaps they have contact

SA-6

O7nWavaC

1    information.  They have subpoena power to go seek out

2    information regarding Mr. Gentile.  I don't know what they've

3    done, but perhaps his counsel in that case know where he can be

4    found if that's what they're looking for.

5            THE COURT:  So you are pursuing an appeal on his

6    behalf even though you are not in communication with him and he

7    has not paid you.

8            MR. FLEMING:  That's -- he owes me money.  He has paid

9    me in the past, but he currently owes me money, yes.

10           THE COURT:  And you're not able to communicate with

11   him despite your efforts to do so.

12           MR. FLEMING:  That's correct, your Honor.

13           THE COURT:  And you're pursuing an appeal on his

14   behalf in those circumstances.

15           MR. FLEMING:  I am, your Honor.

16           THE COURT:  Doesn't that seem unusual?

17           MR. FLEMING:  It is unusual, your Honor.  The question

18   is really, is it improper, and I think it's not improper in the

19   least.  I think there are many defendants who have appeals.

20   They're often unavailable to their attorneys.  In the criminal

21   world that happens.  In the civil world, I mean the appeal is a

22   legal issue.  He authorized me and he asked me to file the

23   appeal and to prosecute the appeal.  And I don't know what he

24   would add -- he's a layperson -- to analyzing the court's

25   rulings.  I mean we discussed with him at length when the case

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

SA-7

O7nWavaC

1   was in the district court through what had happened and got

2   information from him, but now that the record is closed, I

3   don't know what he would add to it.

4           So your Honor, I do feel, yes, of course, it's

5   unusual.  One generally likes to talk to a client and get

6   feedback, but Mr. Gentile is not an attorney, and I don't know

7   what he would really add to the appeal.  So I feel that I can

8   pursue the appeal and file an appeal on his behalf.

9           THE COURT:  No, I'm not suggesting that you can't

10  formulate arguments.  It's just unusual in a civil appeal, I

11  think, for an attorney who is not being paid to pursue the

12  appeal and can't communicate with their client to continue to

13  pursue the appeal.  But thank you for sharing that with me.

14          I'll hear from you, Mr. Lopez.

15          MR. LOPEZ:  We have been diligently trying to locate

16  Mr. Gentile.  The last known address that was given to us turns

17  out to have been an apartment in San Juan, Puerto Rico, that

18  was transferred to his wife by Mr. Gentile, and they both seem

19  now to have disappeared.

20          I do not know of what sanction really could be applied

21  that would be more effective than $16 million he already owes;

22  that is to say, monetary sanction.  Under the C.P.L.R., there

23  is a provision for civil arrest for a party who refuses to

24  participate or is believed to be about to flee the

25  jurisdiction, and I would make an application to your Honor

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

SA-8

O7nWavaC

1    today that that provision of the C.P.L.R. be utilized and that

2    a bench warrant issue for his arrest.

3            In addition, although a monetary penalty will probably

4    not be effective, that should not excuse him from paying one,

5    and so I will also ask that an appropriate monetary sanction be

6    applied.

7            THE COURT:  Have you attempted to reach Mr. Gentile

8    through the Florida proceedings or his counsel in Florida?

9            MS. TAUBER:  I believe not that recently, but maybe

10   sometime since the judgment we have tried to contact Mr. Ford

11   and get the information.  I think that we weren't

12   successfully -- it's a back-and-forth correspondence, but we

13   were about to subpoena the Ford law firm and the Florida

14   lawyers for information on Mr. Gentile, as Mr. Fleming

15   suggests.

16           THE COURT:  I'm sorry.  Who is Mr. Ford?

17           MS. TAUBER:  Oh.  Mr. Ford is his former counsel in

18   this case and he's also, I believe, currently his lawyer in the

19   Florida case.

20           THE COURT:  So you have not recently reached out to

21   Mr. Ford in connection with the Florida litigation and contact

22   information for Mr. Gentile?

23           MS. TAUBER:  We reached out to Mr. Ford, I believe,

24   when the judgment was first entered by your Honor a few months

25   ago in this case, and we had some back-and-forth

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O7nWavaC

1    correspondence.  He was traveling.  We had a few times we were

2    going to speak by phone, and that didn't happen.  And we will

3    subpoena him.  I think I will send the subpoenas out today to

4    make sure, to Mr. Ford.

5           THE COURT:  Mr. Lopez, what notice was provided to

6    Mr. Gentile of today's proceeding?

7           MR. LOPEZ:  Notice was provided to his attorney of

8    record -- Mr. Fleming.

9           THE COURT:  Mr. Fleming, what steps did you take to

10   provide Mr. Gentile with notice of today's proceeding?

11          MR. FLEMING:  I sent the materials I got to the

12   address I had in Puerto Rico.  I also sent an email to

13   Mr. Ford, asking him to have Mr. Gentile contact me.  The

14   Florida lawyers are New York lawyers; they're here in New York.

15   They were counsel of record in this case.  I replaced them.  So

16   they're not exactly hard to find.  And while Mr. Lopez is

17   colorful in saying Mr. Gentile disappeared, according to PACER,

18   he testified in the Florida court on July 9, and -- I think

19   July 8 and 9.  I may have the dates off, but it was in July he

20   testified as a witness.  So he's not truly disappeared.

21          THE COURT:  And when you sent an email to Mr. Ford,

22   what response did you get?

23          MR. FLEMING:  No response.

24          THE COURT:  Thank you.

25          Just to put some context on the record, a judgment was

SA-10

O7nWavaC

1   entered in March of this year for over $8 million plus

2   prejudgment interest against Mr. Gentile.  An appeal was taken

3   in April, but no bond was filed in connection with that appeal,

4   and therefore, the plaintiffs are undertaking an enforcement

5   action; in connection with that action are taking discovery.

6   As I understand it, at the end of May, on May 30, they served a

7   subpoena and deposition notice and a restraining notice.  The

8   deposition was to occur on July 1, and Mr. Gentile failed to

9   appear.

10          I have an application in connection with today's

11  proceeding; specifically, a request for a motion to compel, a

12  deposition to occur on August 1 and for documents to be

13  produced on August 1 under threat of contempt.  I now have an

14  oral application for a bench warrant to be issued and

15  additional unspecified monetary sanctions to be levied.

16          Mr. Fleming is appearing in court today as the

17  attorney of record for Mr. Gentile.  He had previously made a

18  motion to withdraw, which I have granted conditionally on him

19  providing the plaintiffs with a means to effect service on

20  Mr. Gentile.

21          Mr. Fleming, I want to make sure I'm accurate in what

22  I am describing here, but it's my understanding that

23  Mr. Gentile has not authorized you to give the plaintiffs in

24  this litigation an address or means to effect service on him.

25  Am I right?

SA-11

O7nWavaC

```
1              MR. FLEMING:  That is correct, your Honor.  And I
2    didn't want to provide the old address I had because I didn't
3    think it would be effective, so I don't have -- you're correct.
4              THE COURT:  And you're taking the position that you
5    have no means effectively today to ensure service on
6    Mr. Gentile.  Am I right?
7              MR. FLEMING:  That's correct, your Honor.
8              THE COURT:  So --
9              MR. FLEMING:  I don't think I -- if service on me is
10   effective, so be it, but I don't have the -- I don't -- I can't
11   reliably tell you that I've actually delivered materials to
12   Mr. Gentile.  I sent them out to the last known address I have,
13   and some material comes back from time to time saying nobody's
14   there.  I think the plaintiffs had the same experience, that
15   the apartment in Puerto Rico was either uninhabited or --
16   something.  I don't know.
17             THE COURT:  And with respect to the email address that
18   you have for Mr. Gentile, does he respond to emails that you
19   send him at that address?
20             MR. FLEMING:  No.  At the email address I have I got a
21   notice from Microsoft, or whoever, saying the address was not
22   working.  And I happen to have a phone number, your Honor; I
23   got a message that that's disconnected.
24             THE COURT:  OK.
25             Mr. Lopez, I'm going to require you to reach out to
```

SA-12

O7nWavaC

1    Mr. Ford and do whatever investigation is appropriate in

2    connection with the Florida litigation brought by, as I

3    understand it, the SEC to learn how service was made in that

4    litigation effectively on Mr. Gentile and/or to otherwise

5    understand how he can be reached.  I'm going to deny your

6    application made orally today for a bench warrant.  This is

7    what I understand:  Mr. Gentile is --

8            You know, as I think about this, Mr. Fleming -- excuse

9    me one second -- I don't know that the Court of Appeals would

10   be very happy to know that any ruling they issue on an appeal

11   you could not effectively communicate with your client and that

12   he is not returning your messages, not paying you; that you

13   don't have an email address, a phone number or mailing address

14   for him that is effective.

15           Now, the Court of Appeals has its own rules with

16   respect to the requirements of counsel who appear before it on

17   behalf of clients.  I'm not going to presume to tell you what

18   those rules require, but I know, for me, if I have an attorney

19   in court taking positions on behalf of a client they could no

20   longer communicate with, such that if I ordered them to do

21   something they could not effectively bring their client in to

22   court to respond to that order, I would expect counsel to tell

23   me.

24           MR. FLEMING:  I understand that, your Honor, but I --

25   the appellate process is different from the district court

SA-13

O7nWavaC

1    process, and I certainly wouldn't be here with such a client at

2    the district court level.  But there's really very few outcomes

3    at the appellate court.  I mean if it's affirmed, it's

4    affirmed; it's a victory for the plaintiffs, and we proceed.

5    If it's reversed, then presumably, maybe Mr. Gentile will come

6    out from where he is.  I have no idea what will happen at that

7    point.

8            THE COURT:  Mr. Fleming, again, I'm not ruling as to

9    what the Second Circuit would expect of counsel who appear

10   before it.  I leave that for you and them to determine.

11           MR. FLEMING:  Thank you, your Honor.

12           THE COURT:  I think on this record an additional

13   monetary sanction would not be effective in obtaining

14   compliance with the restraining order, the subpoenas or the

15   deposition notice.

16           I think that on this record it may be that the

17   issuance of a bench warrant and potentially a term of

18   imprisonment to coerce compliance with the requirements of this

19   Court and the law may be the only outcome that might obtain

20   compliance.  Obviously, civil contempt law requires me to make

21   a number of findings and for plaintiffs' counsel to make a

22   number of showings before I would issue such a bench warrant.

23   I bring to your attention just one case in this regard -- *CBS*,

24   814 F.3d 91, a Second Circuit decision from 2016.  But I'm

25   going to require a showing by you, Mr. Lopez, that you've

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O7nWavaC

1  exhausted all methods of obtaining an effective avenue of

2  communication with Mr. Gentile, including by reaching out to

3  Mr. Ford and, if necessary, the SEC and learning what you can

4  from the Florida action.  But if you want to renew this

5  application and make a proper showing, I will consider it.

6          MR. LOPEZ:  Thank you, your Honor.

7          THE COURT:  Thank you, all.

8          MR. FLEMING:  Thank you, your Honor.

9          (Adjourned)

SA-15

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
                                        :    18cv7291 (DLC)
AVALON HOLDINGS CORP.,                  :    18cv8896 (DLC)
                                        :
                    Plaintiff,          :
                                        :
          -v-                           :        ORDER
                                        :       ‾‾‾‾‾
GUY GENTILE and MINTBROKER              :
INTERNATIONAL, LTD.,                    :
                                        :
                    Defendants.         :
                                        :
--------------------------------------- X
                                        :
NEW CONCEPT ENERGY, INC.,               :
                                        :
                    Plaintiff,          :
                                        :
          -v-                           :
                                        :
GUY GENTILE and MINTBROKER              :
INTERNATIONAL, LTD.,                    :
                                        :
                    Defendants.         :
--------------------------------------- X
```

DENISE COTE, District Judge:

    Plaintiffs Avalon Holdings Corp. ("Avalon") and New Concept

Energy, Inc. ("New Concept") each brought an action against

defendants Guy Gentile and Mintbroker International, Ltd.

("Mintbroker") for disgorgement of short-swing profits pursuant

to § 16(b) of the Securities Exchange Act of 1934. 15 U.S.C.

§ 78p(b). On March 20, 2024, an Order of final judgment was

entered for plaintiffs Avalon and New Concept. Avalon was

awarded pre-judgment interest in the amount of $1,983,267 for a

total final judgment amount of $8,219,175 against defendants;

New Concept was awarded pre-judgment interest in the amount of $1,971,281, for a total final judgment amount of $8,073,283 against defendants.

On July 8, Avalon filed a motion to compel defendant Gentile to respond to its post-judgment subpoenas.  A July 9 Order set a briefing schedule on the motion, and a hearing was held on July 23.  Gentile was not present at the hearing. Counsel for Gentile, who is also counsel of record for Gentile's appeal to the Second Circuit in this case, appeared at the hearing and represented that he had not been in contact with Gentile since May 2024 at the latest and did not have information on how to effect service on Gentile.  Counsel for Avalon made an oral application for a bench warrant and additional monetary sanctions, which was denied.  Avalon's counsel was granted permission to renew the motion to compel if there was a showing that all possible methods of contacting Gentile had been exhausted.

On August 14, Avalon filed a renewed motion pursuant to Fed. R. Civ. P. 69 to compel Gentile to respond to Avalon's post-judgment subpoenas and an application for a bench warrant for his civil arrest (the "August 14 motion").  On August 22, Avalon requested permission to serve Gentile with notice of its motion for his civil arrest by publication pursuant to Fed. R. Civ. P. 4(f)(3).  An Order of August 29 directed Avalon to serve

2

its motion for civil arrest on Gentile by alternative means, including by publication, email, and social media messaging. Also on August 29, Gentile was ordered to file any opposition to the August 14 motion by September 13, and any reply was to be filed by September 20.  On September 7 and September 8, counsel for Avalon filed affidavits representing that service was effected by publication mail, email, and social media messaging.

Federal courts "have inherent power to enforce compliance with their lawful orders through civil contempt." In re Markus, 78 F.4th 554, 564 (2d Cir. 2023) (quoting Shillitani v. United States, 384 U.S. 364, 370 (1966)).  In addition, the Federal Rules of Civil Procedure permit courts to treat as contempt a party's failure to obey an order to provide discovery, Fed. R. Civ. P. 37(b)(2)(A)(vii), and a party's failure, "without adequate excuse," to obey a subpoena served on it, Fed. R. Civ. P. 45(g).  "A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." CBS Broad. Inc. v. FilmOn.com, Inc., 814 F.3d 91, 98 (2d Cir. 2016) (citation omitted).

District courts possess "broad discretion to design a remedy that will bring about compliance" with the court's orders. Paramedics Electromedicina Comercial, Ltda v. GE Med.

3

SA-18

Sys. Info. Techs., Inc., 369 F.3d 645, 657 (2d Cir. 2004)
(citation omitted).  Arrest may be an appropriate sanction for
civil contempt, so long as it is designed to compel the party to
comply with the court's orders, rather than to punish.  See
Hicks v. Feiock, 485 U.S. 624, 631-34 (1988) (distinguishing
civil and criminal contempt and observing that imprisonment for
civil contempt is appropriate where it is remedial, i.e., where
the party "stands committed unless and until he performs the
affirmative act required by the court's order" (citation
omitted)).  Finally, Federal Rule of Civil Procedure 4.1(b)
explains that "[a]n order committing a person for civil contempt
of a decree or injunction issued to enforce federal law may be
served and enforced in any district."  Fed. R. Civ. P. 4.1(b).

Being that Gentile has failed to comply with Avalon's post-
judgment subpoenas and has failed, pursuant to this Court's
August 29 Order, to file by September 13 any opposition to
Avalon's August 14 motion, it is hereby

ORDERED that Avalon's motion to compel Gentile to comply
with Avalon's post-judgment subpoenas is granted.

IT IS FURTHER ORDERED that Gentile is in civil contempt of
this Court for failing to respond to Avalon's post-judgment
subpoenas or to oppose the August 14 motion.

IT IS FURTHER ORDERED that the United States Marshals
Service is directed to take all necessary measures to effect

4

SA-19

service and enforcement of this Order in any district of the United States where Gentile may be found. Because this case involves Gentile's violations of federal securities laws, this contempt order is issued to "enforce the laws of the United States," and, accordingly, "may be served and enforced in any district." Fed. R. Civ. P. 4(b)(1).

IT IS FURTHER ORDERED that the United States Marshals Service, if called upon to execute the terms of the attached Order, will be permitted to use the minimum degree of non-deadly force necessary to arrest and detain Gentile and bring him before this Court, and will be permitted to enter any premises of Gentile's if he is reasonably believed to be inside and if requested access to such premises is withheld.

IT IS FURTHER ORDERED that, if located by the United States Marshals in any district of the United States, Gentile shall be incarcerated until he responds to Avalon's post-judgment subpoenas or until further Order of this Court.

5

SA-20

IT IS FURTHER ORDERED that Avalon's counsel shall contact the United States Marshals Service to coordinate the execution of this Order. If Avalon so chooses, it will at its own expense file this Order and provide any other forms or payments necessary to facilitate the Marshals' investigation and arrest of Gentile.

Dated:    New York, New York
          September 20, 2024

_____
DENISE COTE
United States District Judge